# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RONNIE PAYNE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. Action No. 10-0617 (RMC) |
| | ) |
| PATRICIA STANSBERRY, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Petitioner Ronnie Payne seeks issuance of a writ of *habeas corpus* under 28 U.S.C. § 2254. He claims that his custody, based on a judgment of conviction entered by the Superior Court of the District of Columbia, violates the Fifth and Sixth amendments to the United States Constitution. The Respondent, Warden Patricia Stansberry, moves to dismiss on the grounds (1) that the petition is time-barred; (2) that claims arising from alleged errors during the trial proceedings are foreclosed by local remedy D.C. Code § 23-110; and (3) that appellate counsel was not constitutionally ineffective. Upon consideration of the parties' submissions and the entire record, the Court will grant Warden Stansberry's motion to dismiss.

## I. BACKGROUND

Following a jury trial before Associate Judge George W. Mitchell, Mr. Payne and co-defendant Ronald E. Garris were convicted of two counts of premeditated first degree murder while armed, two counts of assault with intent to kill while armed, one count of carrying a pistol without a license, and one count of possession of a firearm during a crime of violence. Mr. Payne was sentenced to consecutive sentences ranging from two years to life imprisonment.

*Payne v. U.S.*, 697 A.2d 1229, 1230 & n.1 (D.C. 1997). The underlying facts as recounted by the District of Columbia Court of Appeals on Messrs. Payne and Garris' direct appeal are as follows:

> Terence Woodfork, Hezekiah Vaughn, Kenyetta Jeter and Maurice Carey, all good friends, were seated in a Nissan Pulsar automobile, outside the Breezes Metro Club on Channing Street and Bladensburg Road, N.E., on the night and in the early morning hours of March 12 and 13, 1992. While they were sitting and drinking beer in the Nissan Pulsar, they spotted a blue or gray car carrying a white female and a black male, later identified as Christine Terry and Preston Coe, approach and park. Terry and Coe got out of the car and walked toward the Metro Club. Soon another car drove up, occupied by two black males. The two black males emerged from their car and eventually stood in front of the Nissan Pulsar and opened fire, killing Vaughn and Jeter, and injuring Carey in the back and arm. At the time the shots were fired, neither Woodfork nor Carey saw anyone else on the street. Later, the police showed Woodfork a photo array and he picked out Garris and Payne as the assailants. He also made an in-court identification of both men. When Carey was shown the photo array by the police, he initially picked out only Coe, the black male who was with the white female. He did not identify Garris and Payne until his testimony during their trial. However, Carey testified that after the shots were fired, he saw both the car carrying the two black males and the one bearing the white female and the black male leave the area. The car carrying the black male and white female departed first.
>     At the time of the shootings, Officer Stacey Davis was on duty in the Metro Club area. He "heard . . . gunshots, stepped to the corner and observed the gunshots." As he ran up Channing Street, he saw a vehicle containing a black man and a white woman moving on the street. He also "observed two black males firing into or onto a vehicle." One was dark in complexion and had on a blue jean outfit, and the other was light-complected and had on an orange muscle sweat shirt with blue jeans. When the men saw the officer, they got into a car and drove away. Officer Davis identified Payne in court as one of the men he had seen shooting into the Nissan Pulsar.
>     Christine Terry testified at trial that she had known Garris for about nine to ten months prior to March 13, 1992, and Payne for about six months prior to that time. She met both through her then boyfriend, Preston Coe. Earlier on the night of the shooting incident, she saw Garris and Payne sitting in a car. Garris had a 45 millimeter gun in his lap, but she did not see Payne with a weapon. After Terry arrived in the area of the Metro Club, she overheard Coe tell Garris and Payne to put their guns in the trunk of the car before they went into the club. Payne "said no, that the boys in the occupied car [Vaughn, Jeter, Woodfork and Carey] might see where they're putting their guns." She heard Garris say, "we'll try our shootouts on these young niggers behind us. . . We'll smoke these young niggers behind us." Coe and Terry left the area. As Coe and Terry were leaving the area, Terry said she "[saw] Ronald Garris in front of the . . . blue car . . . shooting into it." She did not see Payne

> with any gun. About half an hour after Coe and Terry reached their apartment, they received a telephone call, and about fifteen minutes after the call Payne and Garris arrived. Garris went into Coe's bedroom with Coe, where the two men remained for about twenty-five to thirty minutes. Garris and Payne were arrested approximately one month after they killed Vaughn and Jeter.

*Id.* at 1230-32 (footnotes omitted) (alterations in original). On direct appeal, Mr. Payne argued that the trial court erred in denying his motion for a new trial based on newly discovered evidence, namely a 9mm. Calico Model M-950 pistol, *id*. at 1233, and "when it admitted the eyewitness identification by Officer Stacey Davis and visited the [crime] scene and then affirmed its ruling on the identification testimony." *Id*. at 1234-35 (alterations in original). He also argued that the trial court erred in giving an aiding and abetting jury instruction and that he was convicted on insufficient evidence. *See* Gov't's Ex. 14B [Dkt. # 14-16] (Brief for Appellant at 29-34). In its decision issued on July 24, 1997, the D.C. Court of Appeals affirmed Mr. Payne's convictions, noting that his arguments "that the evidence was insufficient to convict [him]" and "that the trial court erred in giving an aiding and abetting instruction" were "without merit." *Payne*, 697 A.2d at 1235 n.12.

On October 10, 1997, Mr. Payne moved in the D.C. Court of Appeals to recall the mandate "or alternatively to set aside the panel division judgment." That court construed the motion as a petition for rehearing and, on October 13, 1997, denied it. Pet'r Ex. A (Docket Sheet of Appellate Case No. 93-CF-001643); Gov't's Ex. 1.

On October 28, 1998, the Superior Court received Mr. Payne's "Motion to Vacate Sentence and Set Aside Conviction Ineffective Assistance of Trial Counsel and Appellate Counsel" brought pursuant to D.C. Code § 16-1901 and § 23-110, which was dated August 25, 1998. Gov't's Ex. 2. By Order of March 6, 2000, Judge Mitchell summarily denied Mr. Payne's

"§ 23-110 motion to set aside his conviction because of ineffective assistance of counsel and [his] motion to have counsel appointed to represent him at a hearing on this matter . . . ." Gov't's Ex. 5.

On March 25, 2005, Mr. Payne filed in Superior Court a "Motion to Amended [sic] Original § 23-110(g) Pleading Pursuant [to] Rule 15(a)(c)(1)(2)," in which he challenged the aiding and abetting jury instruction. Gov't's Ex. 7. By Order of March 16, 2006, Associate Judge Geoffrey M. Alprin denied the motion without first obtaining a response from the government "because the motion and files and records of the case conclusively show that defendant is not entitled to relief." Gov't's Ex. 8. Judge Alprin determined that the jury instructions "on the principles of aiding and abetting and on first degree murder . . . were given in accordance with the standard 'red-book' instructions . . . ." *Id*. at 1. He also found that Mr. Payne's consecutive sentences were proper because he was convicted of two murders and two assaults. *Id*. On September 11, 2006, Judge Alprin denied Mr. Payne's motion for re-entry of judgment, noting that his appeal time "had lapsed." *See* Gov't's Ex. 11 at 2. On December 11, 2006, Mr. Payne filed in Superior Court yet another Motion to Vacate Sentence and Set Aside Conviction for Ineffective Assistance of Counsel. *Id.*

On November 24, 2008, Mr. Payne filed a Motion to Vacate Judgment, in which he sought to vacate the order of September 11, 2006. *Id*. at 3. By Order of January 19, 2010, Judge Alprin denied Mr. Payne's motion for new trial "as successive," *id.* at 2, and denied Mr. Payne's motion to vacate judgment upon finding that the Superior Court's rules did not support Mr. Payne's claim. *Id.*

Meanwhile, on August 14, 2008, Mr. Payne moved in the D.C. Court of Appeals to recall the mandate. On August 22, 2008, the Court of Appeals, noting that the mandate had issued on August 15, 1997, denied Mr. Payne's motion as "untimely filed but without prejudice to the filing of an appropriate motion in the trial court." Gov't's Ex. 1 at 7. On September 17, 2008, Mr. Payne filed a motion for reconsideration, Gov't's Ex. 10, which Warden Stansberry represents was "rejected." Resp't's Mot. to Dismiss the Pet. for Writ of Habeas Corpus, Filed by Pet'r Ronnie Payne Pursuant to 28 U.S.C. § 2254, and Mem. in Opp'n to the Pet. ("Gov't's Mem.") [Dkt. # 14] at 17.[1]

On April 19, 2010, Mr. Payne filed the instant habeas action seeking relief under 28 U.S.C. § 2254. He argues that his appellate counsel, Joseph Conte, was ineffective because he had also represented him at trial and, therefore, had a conflict of interest. Pet. at 11-12. Mr. Payne contends that "[s]uch representation was objectionable and clearly violated [his] right to the assistance of counsel under the Sixth Amendment." *Id*. at 12. "Because of the obvious conflict of interest," Mr. Payne asserts, Mr. Conte failed "to investigate facts relevant [to] a § 23-110 motion; construct the § 23-110 motion; file the § 23-110 motion; and move the court to appoint counsel to raise claims regarding ineffective assistance of counsel (at trial), in the § 23-110 motion." *Id*. & Ex. B (Affidavit of Ronnie Payne) ("Payne Aff."). In addition, Mr. Payne states in his affidavit that Mr. Conte "did not discuss the appellate process with me in order to ascertain what issues that I wanted to present in my appellate brief . . . ." Payne Aff. ¶ 7. Mr. Payne contends that but for Mr. Conte's conflict, he "would have argued on direct appeal and in

---

[1] Warden Stansberry cites Gov't Ex. 1, which does not contain a ruling on Mr. Payne's motion for reconsideration.

5

a § 23-110 motion that attorney Conte was ineffective during the trial process when he failed to object to the trial court giving the jury an aiding and abetting instruction." Pet. at 12. He suggests that the evidence did not support such an instruction and contends that "[t]rial counsel should have argued that the indictment only presented facts accusing Petitioner of being the 'principal' assailant and not an aider and abettor of the crimes," *id*., and that he was denied due process "since he was not given any notice that the jury [could] consider convicting him under a different government theory." *Id*. at 13.

Mr. Payne contends further that "[t]he trial court told the jury that it was obligated to find Petitioner guilty notwithstanding the fact that the government failed to carry its burden." Pet. at 14. He asserts that "[b]y instructing the jury that it 'must' find the defendant guilty if the Government has failed to prove any element of the offense, beyond a reasonable doubt, the court gave the jury the clearly unlawful option of convicting on a lower standard of proof." *Id*. at 15. Mr. Payne attaches to the petition Mr. Conte's response to his inquiry as to why he did not challenge the jury instruction on reasonable doubt, Pet'r Ex. C, in which Mr. Conte stated that he "overlooked the faulty jury instruction" and stated that "under the circumstances your best option is pursuing the ineffective option which, of course, I cannot help you with." Pet'r Ex. D. Mr. Payne asserts that in addition to the foregoing errors, he "would have presented a claim against trial counsel for his failure to object to the trial judge's visit to the crime scene by himself." Pet. at 14.

## II. LEGAL STANDARD

"A . . . judge entertaining an application for a writ of habeas corpus shall forthwith award the writ [or issue a show cause order], unless it appears from the application that

6

the applicant . . . is not entitled thereto." 28 U.S.C. § 2243. In addition, a hearing on an application is not required if the application and the government's return "present only issues of law." *Id*.

As a general rule, District of Columbia prisoners, such as Mr. Payne, are foreclosed from federal court review of their convictions by D.C. Code § 23-110, which provides a post-conviction remedy for D.C. prisoners that "is comparable to" the remedy under 28 U.S.C. § 2255 for federal prisoners. *Swain v. Pressley*, 430 U.S. 372, 375 (1977). The exception is where the local remedy is shown to be inadequate or ineffective. The District of Columbia Circuit has determined that § 23–110 does not bar a habeas petition challenging the effectiveness of appellate counsel "because the Superior Court lacks authority to entertain a section 23–110 motion challenging the effectiveness of appellate counsel." *Williams v. Martinez*, 586 F.3d 995, 999 (D.C. Cir. 2009). Thus, "D.C. prisoners who challenge the effectiveness of appellate counsel through a motion to recall the mandate in the D.C. Court of Appeals will get a second bite at the apple in federal court." *Id*. at 1000. Mr. Payne has satisfied the exhaustion requirement and, thus, may pursue his claim of ineffective assistance of appellate counsel under "the standard set forth in 28 U.S.C. § 2254." *Id*. at 1002.

Pursuant to § 2254,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

7

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). The state courts' factual determinations are "presumed to be correct. The applicant [has] the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1). Finally, "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." § 2254(i).

### III. ANALYSIS

Warden Stansberry seeks dismissal of the petition on the grounds that (1) it is time-barred, (2) it is barred in part by D.C. Code § 23-110, and (3) it fails to state a claim of ineffective assistance of appellate counsel.

1. <u>The Statute of Limitations</u>

Warden Stansberry argues that Mr. Payne's habeas petition is barred by the one-year limitations period of 28 U.S.C. § 2244(d)(1), which begins to run from (a) the date a judgment becomes final; (b) "the date on which the impediment to filing an application created by State action . . . is removed . . ."; (c) the date on which the Supreme Court recognized a new constitutional right and made it retroactive to cases on collateral review; or (d) the date "on which the factual predicate of the claim . . . presented could have been discovered through the exercise of due diligence." § 2244(d)(1). She calculates that at the latest, Mr. Payne had until September 20, 2001, to file this action. *See* Gov't's Mem. at 21-25.

The limitations period under § 2244 is not jurisdictional and, thus, "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). In

8

*Williams,* the D.C. Circuit announced a new circumstance when the local remedy provided by § 23-110 is inadequate, thereby opening the door to federal court review of a D.C. prisoner's claim of ineffective assistance of appellate counsel ("IAAC"). *Williams* was finally decided on December 23, 2009 (*reh'g den*.), and arguably only then was the impediment to Mr. Payne's filing of a § 2254 petition removed. *See Williams*, 586 F.3d at 1000 ("[W]e have already recognized some exceptions under section 23-110(g), *and today we recognize another*.") (Emphasis added.) Mr. Payne filed the instant petition four months later, on April 19, 2010. Applying either the statutory date of when the impediment was removed or principles of equitable tolling, the Court will deny Warden Stansberry's motion to dismiss the petition as time-barred.

### 2. The Local Remedy Bar

It is established that challenges to a Superior Court judgment of conviction must be pursued in that court under D.C. Code § 23-110. *Blair-Bey v. Quick*, 151 F.3d 1036, 1042-43 (D.C. Cir. 1998); *Byrd v. Henderson*, 119 F.3d 34, 36-37 (D.C. Cir. 1997). Absent a showing of an inadequate or ineffective local remedy, "a District of Columbia prisoner has no recourse to a federal judicial forum." *Garris v. Lindsay*, 794 F.2d 722, 726 (D.C. Cir. 1986), *cert. denied*, 479 U.S. 993 (1986) (internal footnote omitted). Under District of Columbia law,

> [an] application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be entertained by . . . any Federal . . . court if it appears . . . that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

D.C. Code §23-110(g). Warden Stansberry argues correctly that Mr. Payne's claims based on errors that occurred at his criminal trial are not subject to review by this Court because Mr. Payne

9

has not shown that his local remedy was inadequate to address those errors. The fact that Mr. Payne was unsuccessful in his multiple attempts for relief under § 23-110 does not alone render the local remedy inadequate or ineffective. *Richardson v. Stephens*, 730 F. Supp. 2d 70, 72 (D.D.C. 2010) (citing cases). Therefore, the Court, lacking jurisdiction over any claims based on trial court error, will grant Warden Stansberry's motion to dismiss such claims.

### 3. <u>Ineffective Assistance of Appellate Counsel</u>

Performance of appellate counsel is measured by the same standards that apply to trial counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). The Supreme Court has articulated two separate standards for evaluating the effectiveness of counsel in a criminal case. Under *United States v. Cronic*, 466 U.S. 648 (1984), courts will presume a *per se* violation of the Sixth Amendment right to counsel only " 'if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.' " *Bell v. Cone*, 535 U.S. 685, 697 (2002) (quoting *Cronic*, 466 U.S. at 659) (emphasis in original). Mr. Payne has made no showing in support of a claim under *Cronic*.

Except in those rare circumstances where *Cronic* applies, courts evaluate claims of ineffective assistance of counsel under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires (1) showing that counsel's representation fell below an objective standard of reasonableness; and (2) demonstrating that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008) (quoting *Strickland*, 466 U.S. at 687–88, 694) (quotation marks omitted). The burden of proof rests on Mr. Payne to show first "that [Mr. Conte] was objectively unreasonable . . . in failing to find arguable issues to

10

appeal," and only if he "succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, . . . but for [Mr. Conte's] unreasonable failure . . . he would have prevailed on his appeal." *Smith*, 528 U.S. at 285-86. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

A court's evaluation of an attorney's performance should be highly deferential, *i.e.*, there is a strong presumption that an attorney's conduct fell within the wide range of reasonable professional assistance. *United States v. Toms*, 396 F.3d 427, 432 (D.C. Cir. 2005) *(quoting Strickland*, 466 U.S. at 689). The fact that a particular litigation strategy failed does not mean that it had no chance of success or that counsel was ineffective by employing it. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

Because § 2254(i) explicitly precludes a claim predicated on the inadequate representation of counsel during a collateral proceeding, such as that authorized by D.C. Code § 23-110, Mr. Payne has failed to state a habeas claim based on Mr. Conte's failure to investigate, construct, and file a motion under § 23-110. *See Wright v. Stansberry*, No. 11-5046, 2011 WL 2618210 (D.C. Cir., June 24, 2011) ("Appellant's claim that his appellate counsel was ineffective in litigating a motion pursuant to D.C. Code § 23–110 was properly dismissed because 'defendants lack a constitutional entitlement to effective assistance of counsel in state

collateral proceedings'. ") (quoting *Williams*, 586 F.3d at 1001) (other citations omitted); *accord Wright v. Stansberry*, 759 F. Supp. 2d 49, 51-52 (D.D.C. 2011).

What remains of Mr. Payne's IAAC claim independent of Mr. Conte's failure to represent him in the collateral proceeding is sketchy, but the Court will accept Warden Stansberry's undisputed characterization of the claim as based on Mr. Conte's failure to (1) challenge the aiding and abetting instruction; (2) object to the trial judge's visit to the crime scene alone; and (3) object to the reasonable doubt instruction. Gov't's Mem. at 32-33 (citing Pet. at 12-14); *see* Pet'r Ronnie Payne's Opp'n to Resp't's Mot. to Dismiss the Pet. for Writ of Habeas Corpus, Filed by Pet'r Ronnie Payne Under 28 U.S.C. § 2254, and Mem. in Opp'n to the Pet. [Dkt. # 16] at 3-4.

The first two alleged omissions are belied by the record establishing the opposite. *See generally* Gov't's Ex. 14B (Brief of Appellant).[2] In rejecting Mr. Payne's argument of error stemming from the trial judge's behavior, the appellate court stated:

> Clearly, the trial judge should not have visited the scene of the crime alone. However, neither Payne nor Garris preserved an objection to the trial judge's visit. Significantly, the record shows that prior to visiting the scene of the crime, the trial judge had already ruled that Officer Davis was a credible witness. Thus, he did not rely on his visit to make factual findings regarding the officer's credibility or the reliability of the eyewitness identification. Moreover, although Officer Davis's testimony contained some inconsistencies regarding the night of the murders and what he saw, he identified both Payne and Garris in court as the men he observed shooting into the Nissan Pulsar that night. Therefore, we cannot say that Payne was prejudiced by the trial judge's solo visit to the crime scene.

---

[2] In ruling on a Rule 12(b)(6) motion to dismiss, the Court may consider "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice[,] [*e.g*.,] matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment." *Baker v. Henderson,* 150 F. Supp.2d 13, 15 (D.D.C. 2001) (citations omitted).

*Payne*, 697 A.2d at 1235. As to the claimed error based on the jury instruction, the appellate court, while also rejecting Mr. Payne's argument that he was convicted on insufficient evidence, stated that "Payne's contention that the trial court erred in giving an aiding and abetting instruction is equally without merit [because] [t]here was sufficient evidence to convict Payne either as a principal or as an aider and abettor, and the jury could properly return a general verdict against Payne without specifying whether he was a principal or an aider and abettor." *Id.* at 1235 n.12 (citation omitted). Hence, Mr. Payne's IAAC claim based on two of Mr. Conte's alleged omissions rests on a false premise. Because Mr. Conte raised the foregoing issues on direct appeal, Mr. Payne has not shown that Mr. Conte's performance as to those issues was objectively unreasonable.

Mr. Payne faults Mr. Conte for failing to present as error the following instruction on reasonable doubt:

> Now, the burden is on the Government to prove the defendants' guilt, beyond a reasonable doubt. This burden of proof never shifts throughout the trial. The law does not require a defendant to prove his innocence or to produce any evidence. If you find that the Government has proved, beyond a reasonable doubt, every element of the offense with which these defendants, or this defendant is charged, it's your duty to find that defendant guilty. *On the other hand, if you find that the Government has failed to prove any element of the offense, beyond a reasonable doubt, you must find that defendant guilty.* (Emphasis added.)

Pet'r Ex. D; Gov't's Ex. 15 [Dkt. # 14-17] (certified transcript at 94). Mr. Conte did not object to the instruction at trial. *See* Gov't's Ex. 15 at 114 (Mr. Conte's stating satisfaction with Judge Mitchell's instructions).

Although Judge Mitchell's omission of "not" from the final clause constituted error, it is not a "reasonable probability" that the outcome of Mr. Payne's appeal would have

13

been any different had the issue been raised.  In determining whether a jury instruction is constitutionally infirm, the D.C. Court of Appeals applies the test of "whether there is a 'reasonable likelihood that the jurors who determined . . . guilt applied the instructions in a way that violated the Constitution[.]" *Blaine v. U.S.*, 18 A.3d 766, 774 (D.C. 2011).  "[I]n reviewing a challenge to a reasonable doubt instruction, the court must determine 'whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard.' " *Id.*, n.30 (*quoting Victor v. Nebraska*, 511 U.S. 1, 22–23 (1994) (*citing In re Winship*, 397 U.S. 358 (1970)) (other citation omitted).  However, when, as here, no objection to a defective instruction is made at trial, the D.C. Court of Appeals inquires as to "whether the alleged defect was 'plain error' [by] [asking] first, whether the error was 'obvious or readily apparent' . . . and second, whether the error complained of was 'so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial.' " *Foreman v. U.S.*, 633 A.2d 792, 795 (D.C. 1993) (citing Super. Ct. Crim. R. 52(b)) (other citations omitted).

        In hindsight, the omitted word seems so obvious an error that it is surprising that neither Mr. Conte nor Mr. Garris' attorney objected to the instruction.[3]  *But see id.* at 795-96 ("Finally, the judge made clear to the jury that the government had the burden of proof on each element of the offense.  Taking these instructions as a whole, it simply is not 'obvious or readily apparent' that the judge's reformulation lessened the standard of proof for conviction.").   Even if

---

[3] Warden Stansberry speculates that the omission was "a transcription error," Gov't's Mem. at 45, but absent the court reporter's affidavit confirming such to be the case, the record speaks for itself.

the omission were obvious and readily apparent, Mr. Payne's IAAC claim would fail because it is not reasonably likely that the D.C. Court of Appeals would have found, after reviewing the instructions in their entirety, that the fairness and integrity of the trial were compromised. *See Victor*, 511 U.S. at 22 (concluding that "taken as a whole, the [reasonable doubt] instructions correctly conveyed the concept . . . to the jury.") (citation and internal quotation marks omitted).

In his lengthy charge to the jury, Judge Mitchell told the jury to consider the instructions as a whole, to "not take and disregard any instruction, and give more weight to another, and less weight to another," and to not "give any special attention to any one instruction . . . ." Gov't's Ex. 15 at 90. He informed the jury several times about the presumption of innocence and the government's burden to prove the defendants' guilt beyond a reasonable doubt generally, *see id* at 89-90, 94-95, and as to each offense, *see id.* at 101-11. In addition, the D.C. Court of Appeals found from its own examination of "the [eyewitness] testimony of Woodfork, Carey, Terry and Officer Davis . . . ample evidence upon which reasonable jurors could find the appellants guilty beyond a reasonable doubt."[4] *Payne*, 697 A.2d at 1235 n.12.

The D.C. Court of Appeals' decision in *Foreman*, decided nearly four years before Mr. Payne's appeal, is also telling. In concluding that no plain error had occurred "in the trial

---

[4] In upholding the trial court's denial of Mr. Payne's motion for a new trial, and specifically addressing the prejudice prong of the analysis, the D.C. Court of Appeals observed that "Payne and Garris were identified by Woodfork and Carey as the men who were standing in front of the Nissan Pulsar just before they heard multiple shots. Moreover, Officer Davis saw two persons, not one person, firing a gun. None of the witnesses saw Coe with a gun on the night of the murders, and, given the other evidence in this case, the fact that the gun was later found in one of his bags alone 'would [not] probably produce an acquittal.' " *Payne*, 697 A.2d at 1234 (citation omitted).

judge's single reformulation of the reasonable doubt instruction," *Foreman*, 633 A.2d at 797, the court explained that:

> [t]he reasonable doubt instruction did not eliminate any essential elements of the charged offenses. It did not serve to direct a verdict of guilty. It did not omit to mention reasonable doubt altogether . . . . Moreover, this was not a complex case nor one at all close on the evidence. The government presented strong proof of assault with a dangerous weapon . . . . Under all of the circumstances, the judge's single change in the instruction, doubtfully significant as affecting the jury's understanding of the government's burden, does not disturb our confidence in the fairness and integrity of the trial.

*Id*. at 796 (alteration in original) (internal quotation marks and citation omitted); *see Blaine*, 18 A.3d at 775 nn.35, 36 (citing cases affirming convictions despite erroneous instruction based on strength of the government's case). Given the similarities between Mr. Payne's situation and that of Mr. Foreman, the reasonable likelihood that the D.C. Court of Appeals would have departed from the *Foreman* rationale in addressing Mr. Payne's challenge to the reasonable doubt instruction is nil. *See Foreman*, 633 A.2d at 797 ("The plain error rule reflects a 'careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed.' ") (quoting *United States v. Frady*, 456 U.S. 152, 163 (1982)). Hence, Mr. Payne has not shown that he was prejudiced by Mr. Conte's deficient performance.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Mr. Payne has not shown his entitlement to a writ of *habeas corpus* under 28 U.S.C. § 2254. It therefore will grant Warden Stansberry's motion to dismiss. A memorializing order accompanies this Memorandum Opinion.

/s/
ROSEMARY M. COLLYER
Date: August 5, 2011                United States District Judge